Chief Justice Bibb
delivered the Opinion of the Court.
The plaintiffs sued in debt on a bond with collateral condition, and assigned breaches. The defendants craved oyer, and pleaded conditions performed, with leave to give in evidence any matter which might be specially pleaded, with leave to plaintiffs to give in evidence any matter which might be replied.
Upon the plaintiff’s evidence, the defendants moved for a non suit, and took two objections.
1st. That the suit was improperly brought in the names of Sappington and Parthenia, his wife, with the other defendants. This objection was overruled.
2ndly. That the bond was void, as being taken by the clerk of the court without any authority of law; and because the justices who had allowed the writ of error coram vobis, with supersedeas, on condition that bond and security should be executed in the clerk’s office according to law, had no jurisdiction over the subject matter, in the condition of the bond referred to. This objection was sustained; and the jury, under the instruction of the cornt, found for the defendants.
Action on a bond executed to a feme convert, whose husband afterwards dies, and who marries another husband, shall be in the name of them both, calling her by her latter name.
Bond sued executed to obtain a supersedeas in a writ of error coram vobis.
Circumstances of the execution of the bond, as in other like cases.
*226 The first objection was properly ruled by the court. The bond was executed to Dejarnett and Parthenia, his wife, with the other obligees. The declaration explained that Parthenia Sappington, the wife of John Sappington, who sued with her and other obligees, was the same Parthenia who was called wife of Dejarnett, in the obligation. The evidence by the plaintiff proved that fact, and moreover, that Dejarnett, the former husband of Parthenia was dead, and she was married to Sappington, not only before the execution of the bond to her by the name of Parthenia, wife of Dejarnett, but also before the decree in favor of her, and the other heirs of Hoy, referred to in the writ of error and the condition of the bond Upon the declaration and evidence, it was plainly a bond to Parthenia, and not to her deceased husband, Dejarnett, and other living husband, Sappington, properly joined her and the other obligees in the suit for a chose in action which might survive to the wife.
As to the second objection, the condition of the bond recited that the obligors had prayed for and obtained the writ of error and supersedeas to a decree in favor of the obligees; and was conditioned to prosecute that writ of error with effect, or on failure, to abide the judgment of the court thereon, and pay all damages and costs which should accrue in consequence of the writ of error with supersedeas. The evidence showed also, that they had applied for the allowance of the writ, and obtained it from the two justices, with an order to the clerk to make the writ of error about to be sued on their petition and assignment of errors, operate as a supersedeas, on their executing bond with their surety named, conditioned as the law directs. The clerk refused to indorse the writ of error coram vobis, so issued on their petition and application, until the bond and security was executed according to the order deposited with him by the applicants. To obtain the supersedeas, they executed the bond sued on.
"The bond executed by the defendants was voluntary. They had not pleaded any duress or compulsion, nor given any evidence of it. The condition *227 of the bond, and the whole current evidence by the record of the proceedings on the error coram vobis, showed that the obligors were of their will and motion, prosecuting that writ of error with supersedeas against the obligees, who were resisting. On the trial of the error coram vobis. the obligees took no exception to the jurisdiction of the justices. Both parties submitted and acquiesced in that.
Bond executed in the clerk’s office, to obtain a supersedeas on a writ of error coram vobis, which the clerk refused to endorse without it is valid-It was not against law, and was delivered to the clerk for the obligee.
As there was no evidence of any coersion, but all was voluntary on the part of the obligors, and at their instance and application, as well before the justices as before the clerk they are bound by the obligation. What special plea could they have framed upon the facts proved, to avoid that bond? The obligation is not for any thing against good morals, nor is it prohibited by and law; if not sanctioned by any express provision or requisition of law, it is good as a contract. The clerk used no coersion; he issued the writ in obedience to the order they had obtained from the two justices professing to have authority, under an act of Assembly. He refused to endorse the writ as a supersedeas, unless the parties applying for it would give the bond, conditioned to answer the consequences of their own acts, if illegal. In this condition there is nothing hard nor unreasonable. It was delivered to the clerk, to the use of the plaintiffs. The defendants have neither impeached the bond, nor denied the delivery by plea or by evidence. If the order of the justices, or the act of the clerk in taking it in his office, and under the circumstances, can not give it any additional sanction; so on the other hand, those circumstances can not prejudice its legal operation. And for these reasons the obligation must be valid and binding on the parties. Herewith agree the principles recognized in the cases of the Commonwealth vs Lacaze and others. 2 Dallas 123. Folkes vs Doeminique, 2 Str. 1133. The people vs Collins, 7 John. 554. Stevenson vs Miller, 2 Litt 310. The court improperly ruled the second objection.
It is, therefore, considered by the court that the judgment be reversed, the cause remanded for a *228 venire facias de novo; and the plaintiffs to recover of the defendants their costs in this court, in this behalf expended.
Turner for appellants; Smith and Mayes for appellees.